# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Stephen Leggett,                                 Case No. 3:16CV1750

          Plaintiff

      v.                                           **ORDER**

City of Toledo,

          Defendant

This is a procedural-due-process case under 42 U.S.C. § 1983.

On New Year's Eve, 2015, the City of Toledo fired the plaintiff, Stephen Leggett, who was three months into his tenure as the Provisional Manager of the City's "Beautification Action Team" (BAT). The stated reason for the dismissal, it seemed, was politics: Leggett had served as the campaign manager for former Mayor D. Michael Collins, and, Leggett learned, the City's new Mayor, Paula Hicks-Hudson – who had just defeated Collins's widow in the 2015 mayoral election – "doesn't like your form." (Doc. 5–3 at 62, 63–64).

The City ordinarily considers Managers like Leggett to be "classified" employees whom it cannot fire without cause. Because Leggett held the managerial posting only provisionally, however, the City deemed him an "unclassified" employee whom it could fire at any time and for any reason. This was so because Leggett, before his "provisional" appointment to BAT, worked as an unclassified Mayor's Assistant 2.

Leggett challenged his firing before the City's Civil Service Commission, contending that, despite his provisional appointment as the BAT Manager in September, 2015, he had actually and continuously performed the Manager's duties since July, 2014. According to Leggett, this meant his provisional posting became permanent under § 2101.49 of the Toledo Municipal Code, which converts a provisional appointment to a permanent one if the appointee continuously serves in the position for one year.

The Commission determined that it had no jurisdiction over Leggett's case because he was an unclassified employee who had no right to appear before the Commission.

Leggett then filed suit in the Common Pleas Court of Lucas County, Ohio.

He alleged that the City deprived him of procedural due process by firing him without cause and denying him the opportunity to contest his dismissal. (Doc. 1–2 at ¶¶12–16). He also appealed the Commission's decision under O.R.C. § 2506.01, *et seq.*, contending that the Commission's decision was arbitrary and capricious. (Doc. 1–3).

The City removed the case to this court on the basis of federal-question jurisdiction. (Doc. 1).

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367(a)(1).

Pending are the parties' counter-motions for summary judgment. (Docs. 17, 21). For the following reasons, I grant Leggett's motion as to his due-process claim, hold the remainder of Leggett's motion in abeyance, and deny the City's motion.

**Background**

The Toledo Charter divides the City's civil service into classified and unclassified positions. Tol. Charter § 171.

Employees in the classified service are entitled to certain protections, including the guarantee that the City cannot fire them without cause. Toledo Municipal Code (T.M.C.) § 2101.47. The City ordinarily selects these employees "based on merit and fitness" and after an application process. *Id.* Employees in unclassified positions, in contrast, are at-will employees whom the City can fire for any reason. T.M.C. §§ 171(1) and 172(a).

In January, 2014, Leggett began working as the Commissioner of Special Projects in the City's Department of Public Service, where he was an unclassified employee. (Doc. 5–3 at 28, 30). About three months later, Mayor Collins demoted Leggett to the unclassified position of Mayor's Assistant 2 and transferred him to the Department of Parks, Recreation, and Forestry. (*Id.* at 30).

There Leggett's supervisor was Dennis Garvin, the Department's Commissioner. (*Id.* at 31). Garvin believed that the Mayor had transferred Leggett to his Department so that Leggett could gain a greater understanding of its inner workings. (*Id.* at 74). He was not familiar with Leggett's duties after Leggett left the Parks Department. (*Id.* at 78–79).

### A. The BAT Manager

Leggett continued in the Mayor's Assistant 2 role until July, 2014, when Mayor Collins transferred him to the Department of Inspection to "take over as the manager" of the BAT. (*Id.* at 32). The BAT is a City unit that cleans up vacant properties, cuts grass on City-owned land, and removes graffiti from private property. (Doc. 5–3 at 83). It was Leggett's understanding that he would replace Paul Ringlein, the outgoing and underperforming BAT manager. (*Id.* at 32, 83).

### 1. Exempt Positions

The BAT Manager is an "exempt" position within the City's classified service.

3

According to the Charter, the "Exempt Service" is a set of positions at the management, supervisory, and confidential-staff level of various City departments. *See* T.M.C. § 2101.01. Employees working in "exempt" positions do not have collective-bargaining rights, nor may they receive overtime pay. T.M.C. § 2101.01(a), (b).

City law establishes two routes to obtaining a classified, exempt position.

First, the City may appoint a candidate "from the appropriate certified list [of applicants] and [who is] in the position on the eligibility list as to qualify for the appointment[.]" T.M.C. § 2101.49.

Second, "in the absence of an eligibility list," the City may make a "Provisional Appointment." *Id.* The Code expressly contemplates that such a provisional appointment can become permanent:

> If no eligibility list is established within one year after the employee is provisionally appointed under this process, then the employee shall be made permanent. Alternate time served continuously up to the time of provisional appointment shall be counted toward the one year period.

*Id.*

### 2. Leggett at BAT

Leggett testified that he actively managed the BAT, and was the de facto Manager of that unit, from July, 2014, through September, 2015, when he received the provisional appointment, and from that date until December 31, 2015, when the City fired him.

At the start of his tenure, the BAT was under the umbrella of the City's Department of Inspection. Chris Zervos was the Department Director. (*Id.* at 32). According to Zervos, who supervised Leggett from mid-July, 2014, through November, 2014, Leggett "was managing the [BAT] program." (*Id.* at 84–85). In that role, Zervos explained, Leggett had the right to: 1) authorize

4

time off for certain supervisors; 2) "do discretionary write ups of [certain] supervisors"; 3) request time off for employees in BAT; and 4) approve time reports. (*Id.* at 90).[1]

Leggett acknowledged that, before the City provisionally appointed him as BAT Manager, he held only an unclassified designation as a Mayor's Assistant 2. But he testified that there were "important differences" between what a Mayor's Assistant 2 could do and what, in fact, he had done as the de facto BAT Manager. (*Id.* at 35). He cited, in particular, his ability to supervise and discipline staff as something he could not do were he merely a Mayor's Assistant 2. (*Id.*).

In October, 2014, the City transferred the BAT to the Department of Neighborhoods. Tom Kroma was the Department's Director, and Cindy Geronimo was its Commissioner. (*Id.* at 35–38).

Leggett testified that, beginning in April, 2015 – when BAT activity increased with the onset of warmer weather – he submitted weekly reports to Kroma and Geronimo summarizing the unit's activity. He submitted these reports in his capacity as "Manager – Beautification Action Team." (Doc. 5–9 at 1–14) (weekly reports from April 22, 2015 through August 13, 2015). No one questioned Leggett's use of that title; in fact, Kroma and Geronimo "told [him] to use that title." (Doc. 5–3 at 39).

The record is replete with additional evidence of Leggett holding himself out as the BAT Manager without any objection from his supervisors or anyone else in City government. A very small sampling of this evidence shows:

- Leggett's payroll records through February, 2015, identified him as the BAT Manager (Doc. 5–3 at 44);

---

[1] Garvin, Leggett's former supervisor, also testified it was his understanding that "Leggett was being brought over to . . . run the Beautification Action Team program." (*Id.* at 5–3 at 75).

- Leggett's attendance records for the 2015 calendar year identified him as the BAT Manager (*id.* at 46–47; Doc. 5–18);

- Leggett signed purchase order request forms in his capacity as the BAT Manager, something he could not have done were he only a Mayor's Assistant 2 (Doc. 5–3 at 46–48).

- Leggett had and distributed business cards – that the City ordered for him in April, 2015 – identifying him as Manager of BAT. (Docs. 5–13, 5–14).

### B. Provisional Appointment and Termination

On September 11, 2015, the City provisionally appointed Leggett as the Manager of the BAT. (Doc. 5–3 at 59–60).

Sometime after the appointment, Kroma and Geronimo told Leggett that his position would become permanent. (*Id.* at 61). Nevertheless, on December 31, Geronimo told Leggett that the City was firing him. According to a letter Geronimo handed Leggett, the City decided to eliminate the Mayor's Assistant 2 position. (*Id.* at 62). Another City employee, Mark Sobczak, told Leggett that "Mayor [Hicks-Hudson] doesn't like your form." (*Id.*).

Leggett testified that he was not "given any notice of any charges before his dismissal," nor did he receive a pre-termination hearing. (*Id.*).

### C. Litigation

Believing himself to be a classified employee protected from a politically motivated, at-will firing, Leggett appealed to the Toledo Civil Service Commission.

Over the City's objection that the it lacked jurisdiction to hear Leggett's appeal, the Commission held two days of hearings in March, 2016. With the assistance of counsel, Leggett gave an opening statement, called witnesses, cross-examined the City's witnesses, and submitted a post-

6

hearing brief. (Docs. 5–1 through 5–47) (transcripts, exhibits, briefs, and other materials from Commission hearing).

After taking the matter under advisement, the Commission ruled on May 31, 2016, that it lacked jurisdiction over Leggett's appeal. According to the Commission, Leggett was an unclassified employee with no right to contest his firing:

> Mr. Stephen Leggett was not entitled to procedural protections under the Civil Service Rules. His position as a Mayor's Assistant 2 placed him in an "at will" position appointed by the Mayor, and that position never changed throughout his tenure as an employee with the City of Toledo. Mr. Leggett never served as a Classified employee, nor was he appointed from a certified eligible list.
>
> Therefore, the Toledo Civil Service Commission unanimously concludes that it is without jurisdiction to adjudicate Mr. Stephen Leggett's instant appeal.

(Doc. 5–47 at 2).

The Commission's order did not address Leggett's entitlement to classified status under T.M.C. § 2101.49. Nor did the Commission decide whether the City was justified in firing him.

Leggett then turned to the Lucas County, Ohio, Court of Common Pleas, where he filed both a § 1983 action alleging that the City violated his right to procedural due process, and an appeal of the Commission's decision under O.R.C. § 2506.01, *et seq.* (Doc. 1–2; Doc. 1–4). The City removed the case to this court, and, the parties having filed counter-motions for summary judgment, the case is now ripe for adjudication.

**Standard of Review**

Summary judgment is appropriate under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

I accept the non-movant's evidence as true and construe all evidence in its favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

**Discussion**

Leggett argues that he is entitled to summary judgment because, given the undisputed evidence adduced at the Civil Service Commission, a reasonable jury could only find that the City violated his procedural-due-process rights.

He contends that he served as the acting or de facto BAT manager from mid-July, 2014, until September 11, 2015, when the City provisionally appointed him to that position, and thereafter until his firing on December 31. Leggett then asserts that, given his seventeen months of continuous service as the BAT Manager, his provisional appointment became permanent under § 2101.49. Finally, Leggett maintains that, because he had a property right in his position as the BAT Manager, he was entitled to notice of the charges against him and an opportunity to contest his firing.

The City, in contrast, maintains that Leggett was and always remained an unclassified employee who had no property right in his employment. Alternatively, the City argues that, even if Leggett had a protectable interest in continued employment, he received all the process he was due in the form of the Commission hearing.

8

## A. Legal Framework – § 1983 Claim

To prevail under § 1983, Leggett must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

Here, Leggett has articulated a violation of the Fourteenth Amendment's Due Process Clause, and there is no dispute that the City is a state actor. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

"Procedural due process protects those life, liberty, or property interests that fall within the Due Process Clause of the Fourteenth Amendment." *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "[T]o establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Id.*

## B. Leggett Had a Property Interest in the BAT Manager Position

"Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law[.]" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (internal quotation marks and citation omitted).

"Where a state civil service system categorizes public employees as classified – that is, not subject to removal at will – employees have a state-law created, constitutionally protectable property interest in maintaining their current employment. *Kizer v. Shelby Cnty. Gov't*, 649 F.3d 462, 466 (6th Cir. 2011).

### 1. Job Duties, Not Job Titles, Determine an Employee's Classification

Throughout this litigation, the City has emphasized that Leggett joined municipal government, and remained in municipal government, as an unclassified worker. According to the City, Leggett's designation as an unclassified Mayor's Assistant 2 conclusively establishes that he had no protectable interest in his employment.

In making this argument, the City ignores clearly established Ohio law. As long ago as *In re Termination of Employment of Pratt*, 40 Ohio St. 2d 107, 113 (1974), the Ohio Supreme Court explained that "[i]t must be clear that a mere title is not at all conclusive. The true test [for determining classified status] is the duty actually delegated to and actually performed by an employee."

More recently, in *State ex rel. Barley v. Ohio Dep't of Job & Family Servs.*, 132 Ohio St. 3d 505, 510 (2012), the court emphasized that:

> a position's status as classified or unclassified cannot be determined without considering the duties associated with the position. This is consistent with our longstanding precedent that the job title or position classification used by the appointing authority is not dispositive on the issue whether a public employee is in the classified or unclassified service[.]

Accordingly, the City's formal classification of Leggett is merely the beginning, rather than the end, of the analysis.

### 2. The City Assigned Leggett the Duties of the BAT Manager

Even viewing the evidence in the light most favorable to the City, there is no genuine dispute that, as of mid-July, 2014, the City had delegated to Leggett, and Leggett performed, the duties of the BAT Manager.

Under the Toledo Charter, department Managers are classified employees whom the City cannot fire without good cause. While it may be, as the City contends, that it appoints most Managers via a competitive application process and from a list of eligible employees, City law also allows for provisional appointments when, as was the case here, there was no eligibility list for an open Manager position.[2] And, as already noted, these provisional appointments become permanent once the appointee serves continuously for one year.[3]

That is exactly what happened here.

Leggett and his supervisor Chris Zervos testified that, as of mid-July, 2014, Leggett was the BAT's manager. Two other witnesses – Garvin and former Chief of Staff Bob Reinbolt – also agreed that Leggett was managing the BAT. (Doc. 5–3 at 75); (*id.* at 152) (Reinbolt testifying that it was his "understanding that Mr. Leggett was brought over to manage the BAT program in July of 2014").

Leggett's testimony regarding his job duties as BAT Manager, as well as the documentary evidence establishing that he was continuously holding himself out as such, leave no doubt that he was, in fact, a Manager. Leggett then held the de facto managerial role for thirteen months until, on September 11, 2015, the City appointed him as the BAT's Provisional Manager. He then held the provisional posting for a further three and a half months before the City fired him.

---

[2] It is undisputed that the City did not post an eligibility list for the BAT Manager position. (Doc. 5–3 at 70).

[3] The City has not disputed Leggett's contention that his de facto service as the BAT Manager from mid-July, 2014, through September, 2015, had the effect, under § 2101.49, of converting his provisional appointment into a permanent appointment as the BAT Manager. (Doc. 21 at 1–9; Doc. 28 at 1–5).

Taken together, the undisputed evidence shows that Leggett, despite holding only a Mayor's Assistant 2 classification, was, in fact, the BAT Manager from July, 2014, through December, 2015. That was enough to qualify him for a permanent appointment under T.M.C. § 2101.49.

In contrast, there is no evidence whatsoever that contradicts, refutes, or even rebuts the evidence establishing that Leggett was the BAT Manager since mid-July, 2014.

The only evidence arguably conflicting with Leggett's account is a statement by Victoria Coleman, the Manager of Administrative Services in the City's Human Resources Department, that Leggett did not start working at BAT until February, 2015. (Doc. 21–1 at ¶7). According to Coleman, "on February 13, 2015 Mayor Collins moved Mr. Leggett to the City's Inspection Department also as a Mayor's Assistant 2 and an unclassified position. At that time he was assigned to the City's Beautification Action Team." (*Id.*).

But Coleman's affidavit is insufficient to defeat summary judgment.[4]

Most importantly, there is no basis for me to conclude that Coleman has personal knowledge about Leggett's tenure at BAT. She does not explain how she identified February 13, 2015, as Leggett's start date with that unit. And though she claims to have based her affidavit on personnel records, Coleman does not identify which record establishes the alleged February, 2015, start date.[5]

---

[4] The affidavit is the subject of a pending motion to strike. (Doc. 22). Because Coleman's affidavit does not help the City, I assume, without deciding, that it is admissible.

[5] I can also take judicial notice that Mayor Collins passed away on February 6, 2015, which is nine days before, according to Coleman, he reassigned Leggett to BAT. *See* Tom Troy, *Toledo Mayor D. Michael Collins taken off life support, dies at 70*, TOLEDO BLADE, Feb. 6, 2015, http://goo.gl/MqUjCV.

Furthermore, Coleman's unexplained assertion is contrary to the sworn testimony of four witnesses[6] – Leggett, Zervos, Garvin, and Reinbolt – who placed Leggett at BAT in July, 2014. Although Coleman, too, testified at the Civil Service Commission hearing, she did not discuss Leggett's start date.

At best, the City has offered a "mere scintilla" of evidence that Leggett started as the BAT Manager in February, 2015 – and thus did not work continuously for one year so as to transform his provisional appointment into a permanent one. But "the mere existence of a scintilla of evidence in support of [a party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson*, *supra*, 477 U.S. at 242.

Finally, I recognize that the City's Civil Service Commission reached the opposite conclusion: that Leggett was, and remained, an unclassified employee. But the City has not argued that this finding has preclusive effect here, and I will not raise that issue sua sponte. *Cf. Neff v. Flagstar Bank, FSB*, 520 F. App'x 323, 326–28 (6th Cir. 2013) (district court committed reversible error by raising res-judicata defense sua sponte).

In sum, the undisputed evidence shows that Leggett was the de facto Manager of BAT from his assignment to that unit in mid-July, 2014, and that he continued in that capacity, albeit having obtained the de jure title of Provisional Manager on September 11, 2015, until the Mayor fired him, on December 31, 2015, because she did not "like his form."

Leggett therefore held a classified position – and a protected property interest in continued employment. *Kizer*, *supra*, 649 F.3d at 466.

---

[6] Not to mention the voluminous documentary evidence placing Leggett at BAT well before February, 2015.

### C. The City Deprived Leggett of His Property Interest

It is undisputed that the City fired Leggett on December 31, 2015. Accordingly, any rational jury would conclude that Leggett established the second element of his due-process claim.

### D. Leggett Did Not Receive Notice or a Meaningful Opportunity to Be Heard

"[T]he root requirement of the Due Process Clause" requires that "an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Loudermill*, *supra*, 470 U.S. at 542 (emphasis in original).

"For a public employee with a property interest in continued employment, due process includes a pre-termination opportunity to respond, coupled with post-termination administrative procedures." *Silberstein v. City of Dayton*, 440 F.3d 306, 315 (6th Cir. 2006).

"Pre-termination hearings need not be elaborate. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Mitchell v. Fankhauser*, 375 F.3d 477, 480 (6th Cir. 2004) (internal quotation marks and citation omitted).

Here, the record unambiguously establishes that the City violated these requirements.

The City dismissed Leggett, effective immediately, after giving him the thinnest of explanations (the new Mayor "doesn't like your form") and without affording him a chance to present his side of the story. (Doc. 5–3 at 62).

Thereafter, the City failed to hold the internal hearing that, according to § 2101.47 of the Municipal Code, the City must extend to classified employees it intends to dismiss. *See* T.M.C. § 2101.47(a) ("The hearing shall be held no more than ten (10) work days after the charges have been served on the employee."); *id.* at § 2101.47(b) ("The City's designee shall hear the evidence in

14

support of the charges and the evidence in defense of the charges and . . . shall make a recommendation to the Mayor on the case within five (5) work days after the day of the hearing.").

That Leggett appealed his case to the Civil Service Commission did not, moreover, cure these deficiencies.

After all, the Commission, having concluded it lacked jurisdiction over the case, never considered whether there was good cause for Leggett's dismissal. Thus, despite the ample procedural protections Leggett enjoyed at the Commission hearing, no reasonable jury could find that the hearing was a meaningful opportunity to contest the *bona fides* of the City's decision to fire him.

For these reasons, Leggett is entitled to summary judgment on his procedural-due-process claim.

### E. Further Proceedings

Although Leggett is entitled to summary judgment on his § 1983 claim, I am not prepared to decide the appropriate measure or form of damages (i.e., a new hearing to decide the propriety of Leggett's dismissal, an award of back pay, reinstatement, etc.). Nor, until I sort that matter out, do I believe it necessary to address Leggett's separate claim under O.R.C. § 2506.01, *et seq.*[7]

Accordingly, I will set this case for a further status/scheduling conference at which the parties should be prepared to discuss: 1) the appropriate measure or form of damages; and 2) whether it is necessary for me to rule on Leggett's claim under O.R.C. § 2506.01. In the interim, the parties should discuss whether they can settle these outstanding matters.

---

[7] This statute gives Leggett the right to appeal the Commission's decision on the ground that it was, *inter alia*, "arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." O.R.C. § 2506.04.

## Conclusion

It is, therefore,

ORDERED THAT:

1. The City's motion for summary judgment (Doc. 21) be, and the same hereby is, denied;

2. Leggett's motion for summary judgment (Doc. 17) be, and the same hereby is, granted as to the procedural-due-process claim and otherwise held in abeyance;

3. Leggett's motion to strike (Doc. 22) be, and the same hereby is, denied as moot;

4. The parties shall discuss whether they can reach a settlement as to Leggett's damages and the necessity of adjudicating Leggett's remaining claim; and

5. The clerk of court shall set this case for a further telephonic status conference.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge